PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

CUSTOM SHIP INTERIORS; FREMONT
COMPENSATION INSURANCE GROUP,
                                   *Petitioners,*

v.

MICHAEL ROBERTS; BENEFITS REVIEW
BOARD; DIRECTOR, OFFICE OF
WORKERS' COMPENSATION PROGRAMS,
UNITED STATES DEPARTMENT OF
LABOR,

                                   *Respondents.*

No. 01-1880

On Petition for Review of an Order
of the Benefits Review Board.
(BRB No. 00-832)

Argued: June 3, 2002

Decided: August 15, 2002

Before WILKINSON, Chief Judge, and NIEMEYER and
WILLIAMS, Circuit Judges.

_____

Affirmed by published opinion. Chief Judge Wilkinson wrote the
majority opinion, in which Judge Williams joined. Judge Niemeyer
wrote a dissenting opinion.

_____

## COUNSEL

**ARGUED:** Frank Joseph Sioli, Jr., VALLE & CRAIG, P.A., Miami,
Florida, for Petitioners. Ralph R. Lorberbaum, ZIPPERER & LOR-

BERBAUM, P.C., Savannah, Georgia, for Respondent Roberts. Mark S. Flynn, Senior Appellate Attorney, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Respondents Board and Director. **ON BRIEF:** Lawrance B. Craig, III, VALLE & CRAIG, P.A., Miami, Florida, for Petitioners. Howard M. Radzely, Acting Associate Solicitor, Allen H. Feldman, Associate Solicitor for Special Appellate and Supreme Court Litigation, Nathaniel I. Spiller, Deputy Associate Solicitor, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Respondents Board and Director.

---

**OPINION**

WILKINSON, Chief Judge:

Petitioner Custom Ship Interiors appeals the decision of the Benefits Review Board ("BRB") that regular per diem payments made to employees incurring no room and board expenses should be included as wages under the Longshore and Harbor Workers' Compensation Act ("LHWCA" or "Act"), 33 U.S.C. §§ 901 *et seq.* (2002). Custom Ship contends that the payments were "advantages" not subject to tax withholding, and thus not properly viewed as "wages" under the Act. Because the per diem payments were disbursed to the employee each week despite the fact that Custom Ship knew that he was incurring no food or lodging expenses needing reimbursement, we affirm the judgment of the BRB that the payments were includable as "wages" under the Act.

I.

Michael Roberts injured his back while remodeling a Carnival Cruise ship for his employer, Custom Ship Interiors. Roberts had worked for Custom Ship for approximately nine years. His work was seasonal, covering roughly two-thirds of the year. During his periods of employment, he normally worked six days a week for a total of about sixty hours.

In addition to his weekly salary and any overtime pay, Roberts' employment contract entitled him to per diem payments of approxi-

mately $77.50 per day. According to Custom Ship, the per diem was non-taxable and was intended to cover employees' meal and lodging expenses while they were on jobs away from home. However, Custom Ship provided these cash payments without any restrictions, meaning the recipients could spend them in any way they saw fit. For approximately one year prior to his injury, Roberts was assigned to Carnival and incurred no room and board expenses because Carnival provided free room and board to its remodelers. Custom Ship knew that Carnival provided these amenities. Still, Custom Ship continued to provide the unrestricted cash payments to employees working on Carnival ships despite knowing that none of the employees incurred any expenses.

On August 21, 1998, while working aboard a Carnival Cruise ship docked in Norfolk, Virginia, Roberts was struck by a steel bunk bed falling from the wall. Immediately after the accident, Roberts was sent to lie down in an adjacent cabin and his supervisors were notified. A day or two later, after experiencing intense back, neck, head, and right leg pain, he went to see a physician on the ship. He remained on the ship for some time, hoping his condition would improve and attempting to do some light work. However, he was unable to work and eventually left the ship for Florida in order to seek medical attention. Since the injury, Roberts has experienced constant back pain and has not performed any further work for Custom Ship.

On March 15, 1999, Roberts filed a claim for disability benefits under the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901 *et seq.*, in Florida where he was living at the time. His claim went before an Administrative Law Judge who determined that Roberts was temporarily disabled as a result of a work-related injury, a finding not disputed on appeal. Roberts was thus entitled to benefits, the amount of which are based on a claimant's average weekly wage as defined and calculated under the Act. Roberts claimed that in addition to his normal weekly wage and overtime, the $77.50 per diem should be included in his average weekly wage calculation. However, the ALJ ruled that tax-exempt per diems for the purpose of defraying expenses for meals and lodging do not fall within the definition of wages set forth in the Act. The ALJ concluded that Roberts' average weekly wage was $377.13.

The Benefits Review Board reversed. Because the injury occurred in Virginia, the law of this circuit was controlling. *See* 33 U.S.C. § 921(c). And under *Universal Maritime Service Corp. v. Wright*, 155 F.3d 311 (4th Cir. 1998), the Board held Roberts' per diem payments should be included in the calculation of average weekly wages. The BRB based its conclusion primarily on the fact that Roberts received the per diem in his pay check every week, regardless of whether he incurred any expenses. Moreover, the BRB concluded that the per diem was part of Roberts' employment contract. Thus, the BRB determined that Roberts' average weekly wage was $690.11. Custom Ship now appeals.

## II.

The Longshore and Harbor Workers' Compensation Act compensates covered workers for the loss of wage-earning capacity due to disabling job-related injuries. *See Metropolitan Stevedore Co. v. Rambo*, 521 U.S. 121 (1997). At the heart of the Act's compensation scheme is the definition of "wages" contained in § 2(13). That section specifies what items will be used to determine the claimant's pre-injury average weekly wage, which is then used to calculate benefits. *See Wright*, 155 F.3d at 317. It defines "wages" as:

> the money rate at which the service rendered by an employee is compensated by an employer under the contract of hiring in force at the time of the injury, including the reasonable value of any advantage which is received from the employer and included for the purposes of any withholding tax under subtitle C of the Internal Revenue Code of 1954 [26 U.S.C.A. § 3101 et seq.] (relating to employment taxes). The term wages does not include fringe benefits, including (but not limited to) employer payments for or contributions to a retirement, pension, health and welfare, life insurance, training, social security or other employee or dependent benefit plan for employee's or dependent's benefit, or any other employee's dependent entitlement.

33 U.S.C. § 902(13).

In *Wright*, we interpreted § 2(13) to define "wages" as "the 'money rate' of compensation that is provided (1) for the employee's services

(2) by an employer (3) under the employment contract in force at the time of the injury." 155 F.3d at 325. All compensation that meets these requirements satisfies the Act's definition of wages, although § 2(13) contains two clauses under which a payment might fall.

The opening clause of § 2(13) broadly covers the money rate at which an employee is compensated under his employment contract for providing services. We concluded in *Wright* that, "[a]t a minimum, this encompasses cash compensation" provided for services rendered under the employment contract. *Id.* at 319. If the payment at issue is not regular cash compensation it might still fall under the second clause, which expressly includes as a "wage" the reasonable value of "any advantage" received by the employee that is subject to tax withholding. *Id.* at 319-20. It is important to note that the second clause does not serve to limit the first. *See id.* at 319 n.10. Instead, it defines a different category of benefits that might be considered wages. Although the second clause encompasses both monetary and in kind compensation so long as it is "readily identifiable and calculable," *id.* at 322-24, it primarily addresses nonmonetary benefits that cannot be viewed as the regular money rate of compensation. *See id.* at 319-21. Finally, the third clause expressly excludes other "fringe benefits," whose value to the employee is "too speculative to be readily converted into a cash equivalent." *Id.* at 320.

The Fifth Circuit subsequently interpreted our decision in *Wright* to mean that if a benefit is paid in dollars and cents and therefore has a value that is apparent on its face, it constitutes a wage rather than a fringe benefit under § 2(13). *James J. Flanagan Stevedores, Inc. v. Gallagher*, 219 F.3d 426, 432 (5th Cir. 2000). Thus, in *Gallagher*, the Fifth Circuit held that container royalty benefits paid annually to longshoremen are properly included as wages in the calculation of benefits under the Act. *Id.* at 433.

III.

Custom Ship contends that the contested payments were reimbursements for food and lodging rather than regular compensation, and thus that they may not count as "wages" unless they were subject to employment tax withholding. However, Custom Ship's argument flies in the face of its decision to regularly provide Roberts the payments

despite knowing that he had no expenses to reimburse. Because the payments were virtually indistinguishable from Roberts' regular hourly wages, we must affirm the decision of the BRB.

We recognize, of course, that per diem payments are traditionally seen as reimbursements for expenses, including room and board when traveling, and are not generally considered regular taxable wages. *See* 26 U.S.C. § 119 (2002). However, when a per diem is given in the face of knowledge that the employee has no expenses, it is less clear that the per diem is a reimbursement rather than a regular wage.

The payments here had every indicia of an ordinary wage. Roberts regularly received them in his weekly pay check as a part of his employment contract. Like his hourly wages, the payments correlated to the amount of time Roberts worked each week. If Roberts worked one day, he would receive one per diem payment in his pay check. Moreover, the payments were unrestricted cash payments. There was no requirement that Roberts spend the payments on room and board. In fact, Roberts was not even required to incur any room and board expenses at all. Thus, Custom Ship's attempt to characterize the payments as room and board reimbursements, and thus nonmonetary "advantages," does not change the fact that they were obviously regular wages.

Whether a true per diem reimbursement payment should be includable as a "wage" under the Act is not the relevant question here because these payments did not resemble reimbursements in any way. True per diem reimbursements generally bear at least some rough approximation to room and board expenses; however the payments here were not linked to actual expenses of any sort. Custom Ship knew that Carnival provided free food and lodging to ship remodelers. Thus, Custom Ship included the payments in Roberts' weekly pay checks despite knowing that he was not incurring any of the expenses the per diem was nominally to reimburse.

Custom Ship argues that the payments at issue must be subject to withholding to be viewed as a wage. However Custom Ship misconstrues the Act's definition of a "wage." Whether or not a payment is subject to withholding is not the exclusive test of a "wage." Monetary compensation paid pursuant to an employment contract is most often

subject to tax withholding, but the LHWCA does not make tax withholding an absolute prerequisite of wage treatment. As the BRB correctly noted, "the *per diem* at issue here is part of the money claimant receives from employer, and is thus includable in average weekly wage under the first clause of Section 2(13) regardless of whether it is subject to tax withholding." Michael A. Roberts, BRB No. 00-832 (May 15, 2001). Because the payments are included as wages under the first clause of § 2(13), Custom Ship's invocation of the second clause of § 2(13) is unavailing. This second clause enlarges the definition of "wages" to include meals and lodging provided in kind by the employer, but only when the in kind compensation is subject to employment tax withholding. The second clause, however, does not purport to speak to the basic money rate of compensation for service rendered by an employee under which the cash payments in this case fall. *See Wright*, 155 F.3d at 319 & n.10.

Custom Ship further argues that we should follow the Fifth and Ninth Circuits' holdings that the value of meals and lodging furnished by an employer is not includable as wages under the LHWCA. *H.B. Zachry Co. v. Quinones*, 206 F.3d 474 (5th Cir. 2000); *Wausau Ins. Cos. v. Dir., Office of Workers Comp. Programs*, 114 F.3d 120 (9th Cir. 1997). This case is quite different from *Quinones* and *Wausau*, however. The payment here was in the nature of monetary compensation. By contrast, *Quinones* and *Wausau* involved the value of meals and lodging provided to employees. As we have already noted, monetary compensation and in kind benefits are treated differently under the statute in that the latter to be includable must be subject to tax withholding. That is not true of Roberts' monetary payments, however. In fact, we note further that the BRB rejected Roberts' contention that the value of the free room and board provided by Carnival should also be viewed as wages, and Roberts does not appeal that decision. Instead, Roberts is claiming as wages only the actual money he regularly received in his weekly pay check.*

The so-called per diem in this case was nothing more than a disguised wage. Were it viewed otherwise, Roberts would not be ade-

---

*Custom Ship's reliance on *McNutt v. Benefits Review Board*, 140 F.3d 1247 (9th Cir. 1998), is similarly unavailing. In *McNutt*, unlike here, the claimant had incurred actual room and board expenses.

quately compensated for the loss of his wage-earning capacity at the time of his injury. That, of course, would undermine the entire premise of the Longshore and Harbor Workers' Compensation Act.

IV.

For the foregoing reasons, we affirm the judgment of the Benefits Review Board.

*AFFIRMED*

NIEMEYER, Circuit Judge, dissenting:

Michael Roberts was injured while working as an employee for Custom Ship Interiors, a ship remodeling firm. At the time of his injury, Roberts was working on the remodeling of a Carnival Cruise ship. He filed a claim for disability benefits under the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. § 901 *et seq.*, and the Administrative Law Judge ("ALJ") determined that Roberts was entitled to benefits.

Disability benefits under the LHWCA are calculated using the claimant's average weekly wage as defined by the Act. *See* 33 U.S.C. § 902(13). In computing Roberts' average weekly wage, the ALJ took into account Roberts' normal weekly wages and overtime pay, but not the $77.50 per diem paid by his employer to defray the costs of Roberts' meals and lodging while Roberts worked away from home on the Carnival Cruise ship. The Benefits Review Board reversed, concluding that the per diem payments should be included as part of Roberts' average weekly wages because the per diem payments were paid every week, regardless of whether Roberts incurred the meals and lodging expense, noting that while working on the Carnival Cruise ship, Roberts did not incur expenses for meals and lodging because Carnival Cruise supplied meals and lodging to workers remodeling its ship, not as a matter of contractual obligation, but merely as an accommodation to the workers.

Because I agree with the ALJ's decision not to include the per diem in calculating Roberts' weekly wage, I would reverse the decision of the Benefits Review Board.

It is true that Custom Ship Interiors paid the per diem regardless of how much the employee actually incurred for meals and lodging or whether the employee incurred any expense at all. It was a fixed sum reimbursement paid to every employee who worked away from home and did not depend on an employee's accounting for his actual expenses. And thus it is also true that to the extent that an employee did not incur actual expenses equal to the $77.50 per diem paid by Custom Ship Interiors, the per diem payment provided the employee with a monetary advantage. But this monetary advantage was not *compensation for services*. Rather, it was simply an advantage realizable by the employee who did not use the entire per diem expenses.

The proper decision in this case turns on whether this monetary advantage falls within the definition of wages. The controlling definition of wages is supplied by 33 U.S.C. § 902(13), which provides:

> The term "wages" means the money rate at which the *service* rendered by an employee is *compensated* by an employer under the contract of hiring in force at the time of the injury, *including* the reasonable value of any advantage which is received from the employer and included for purposes of any withholding of tax under subtitle C of the Internal Revenue Code of 1954 [26 U.S.C. §§ 3101 *et seq*.].

(emphasis added). The text of this provision requires that a wage be compensation for "service," not a reimbursement for expenses, and we have so concluded. *See Universal Maritime Service Corp. v. Wright*, 155 F.3d 311, 319 (4th Cir. 1998) (defining "wages" as "the 'money rate' of compensation that is provided (1) for the employee's services (2) by an employer (3) under the employment contract in force at the time of the injury"). Simply because a per diem is granted regardless of the amount of expenses actually incurred is not a basis by which to convert the per diem allowance into a compensation for service. Indeed, were the employee able to work while living at home, he would not receive the per diem but would still have rendered the same services to his employer.

Moreover, the "including" clause — which defines as a wage "the reasonable value of any advantage which is received from the employer and included for purposes of any withholding of tax under

subtitle C of the Internal Revenue Code" — does not make a reimbursement for expenses a component of average weekly wages for two reasons. First, the per diem is paid for expenses incurred on the road, whether actually incurred or not, and it is not a compensation for services. Second, the per diem is not included in any W-2 form reported to the IRS. As we explained in *Universal Maritime*, the "including" clause defines as a wage any form of nonmonetary compensation as long as that nonmonetary compensation could be included as wages "and must be subject to tax withholding." *Id.* at 323.

The majority suggests that if an employee does not incur the expenses up to the amount of per diem for meals and lodging, it somehow receives the balance as compensation for services. If this principle were correct, every employee who "saved" money on a fixed per diem would owe the United States taxes. But this is not the law, nor is it the practice. *See*, *e.g.*, *H.B. Zachry Co. v. Quinones, Director OWCP*, 206 F.3d 474, 479 (5th Cir. 2000); *McNutt v. Benefits Review Board*, 140 F.3d 1247, 1248 (9th Cir. 1998) (per curiam).

Because I conclude that the per diem expenses which were paid irrespective of actual expenses were not compensation for services and therefore should not have been included in Roberts' average weekly wage for calculation of disability benefits, I would reverse the decision of the Benefits Review Board. Accordingly, I respectfully dissent.