# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

November 6, 2008

Charles R. Fulbruge III
Clerk

No. 07-60495

B & D CONTRACTING; ZURICH AMERICAN INSURANCE CO

Petitioners

v.

OTIS PEARLEY; DIRECTOR, OFFICE OF WORKERS' COMPENSATION
PROGRAMS, US DEPARTMENT OF LABOR

Respondents

Petition for Review of an Order
of the Benefits Review Board

Before REAVLEY, CLEMENT, and PRADO, Circuit Judges.

PRADO, Circuit Judge:

B & D Contracting ("B&D") and Zurich American Insurance Company petition this court for review of the Benefits Review Board's ("BRB") order affirming an administrative law judge's ("ALJ") award of disability benefits to Otis Pearley ("Pearley") pursuant to the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. §§ 901-950. The issue in this appeal is whether the ALJ and the BRB properly classified B&D's per diem payments to Pearley as "wages" for the purpose of calculating benefits under the LHWCA. Finding no error, we deny the petition for review.

## I. FACTS AND PROCEDURAL HISTORY

Pearley began work as a shipfitter for B&D in July 1999, earning $16.50 per hour. When he filed his first tax return, approximately six months after starting work, he discovered that B&D had divided his paycheck into an hourly taxable rate of $8.50 and an untaxed hourly "per diem"[1] rate of $8.00. In July 2000, Pearley received a raise to $9.50 per hour in wages and $9.00 per hour in per diem payments.

On June 10, 2002, Pearley injured his back in the course of his employment. B&D paid Pearley $241.52 per week in temporary disability benefits from June 2002 through January 2006. It specifically excluded its per diem payments to Pearley in the calculation of his benefits rate. Pearley challenged the amount of these payments before a Department of Labor ALJ.

The ALJ concluded that B&D should include Pearley's per diem payments as wages for the purpose of calculating his average weekly wage. Accordingly, the ALJ calcuated Pearley's average weekly wage as $761.98, with a corresponding benefits rate of $507.98.[2] The ALJ denied B&D's motion for reconsideration. The BRB affirmed the ALJ's decision, and B&D filed this timely petition for review.

## II. JURISDICTION AND STANDARD OF REVIEW

This court has jurisdiction to review a final decision of the BRB relating to an injury that occurred within this court's territorial jurisdiction. 33 U.S.C. § 921(c). Here, the claimant's injury occurred in Avondale, Louisiana.

This court's review of a BRB decision is "limited to considering errors of law and ensuring that the [BRB] adhered to its statutory standard of review, that is, whether the ALJ's findings of fact are supported by substantial evidence

---

[1] Both parties refer to these payments as "per diems," although they are calculated on an hourly basis. For the sake of simplicity, we adopt the same terminology.

[2] A totally disabled employee's benefits are calculated as two-thirds of the employee's average weekly wage at the time of injury. 33 U.S.C. §§ 908(a)-(b), 910.

and are consistent with the law." H.B. Zachry Co. v. Quinones, 206 F.3d 474, 477 (5th Cir. 2000) (quotation omitted). We review the BRB's legal conclusions de novo. Tarver v. Bo-Mac Contractors, Inc., 384 F.3d 180, 181 (5th Cir. 2004). We do, however, afford deference to interpretations of the LHWCA by the Director of the Office of Workers' Compensation Programs. Pool Co. v. Cooper, 274 F.3d 173, 177 (5th Cir. 2001).

## III. DISCUSSION

The purpose of the LHWCA is to compensate employees for the loss of wage-earning capacity resulting from work-related injuries. Metro. Stevedore Co. v. Rambo, 515 U.S. 291, 298 (1995). The LHWCA defines the types of compensation that qualify as wages for the purpose of determining an employee's pre-injury average weekly wage, which is then used to calculate the amount of disability benefits. Under the LHWCA, "wages" are defined as

> the money rate at which the service rendered by an employee is compensated by an employer under the contract of hiring in force at the time of the injury, including the reasonable value of any advantage which is received from the employer and included for purposes of any withholding of tax under subtitle C of title 26 (relating to employment taxes). The term wages does not include fringe benefits, including (but not limited to) employer payments for or contributions to a retirement, pension, health and welfare, life insurance, training, social security or other employee or dependent benefit plan for the employee's or dependent's benefit, or any other employee's dependent entitlement.

33 U.S.C. § 902(13). The only question before us is whether the per diem payments B&D made to Pearley fall under this definition of wages.

This court has previously construed the definition of "wages" under § 902(13). In Quinones, we considered whether the tax-exempt value of meals and lodging was considered "wages" under the LHWCA.[3] 206 F.3d at 477-79.

---

[3] The meals and lodging were exempt from federal income taxation under § 119 of the Internal Revenue Code, which provides,

The claimant argued that wages include "the reasonable value of any advantage received," and that the phrase "and included for purposes of any withholding of [federal income tax]" was illustrative, but not limiting. The panel disagreed:

> [The claimant] implicitly construes the first occurrence of the term "including" as meaning "including but not limited to." That construction is undermined by the fact that the second occurrence of the term "including" in § 902(13) is followed by the parenthetical "(but not limited to)." Both occurrences of the term "including" were added to § 902(13) in the 1984 amendments to the LHWCA, and it is illogical to assume that Congress intended both to be construed as "including but not limited to" but only chose to modify the second occurrence of the term with a parenthetical.

Id. at 479.

The court concluded that under § 902(13), "'wages' equals monetary compensation plus taxable advantages," and therefore, the value of meals and lodging exempt from taxation under § 119 are not wages or taxable advantages and are excluded from the definition of wages. Id.; accord Wausau Ins. Cos. v. Director, OWCP, 114 F.3d 120, 121-22 (9th Cir. 1997) (holding that the value of meals and lodging that are tax exempt under § 119 is excluded from wages under the LHWCA).

We subsequently interpreted the holding in Quinones to mean that "for a [payment] to constitute a wage, it must be considered either monetary compensation or a taxable advantage." James J. Flanagan Stevedores, Inc. v.

---

> There shall be excluded from gross income of an employee the value of any meals or lodging furnished to him, his spouse, or any of his dependents by or on behalf of his employer for the convenience of the employer, but only if—
> > (1) in the case of meals, the meals are furnished on the business premises of the employer, or
> > (2) in the case of lodging, the employee is required to accept such lodging on the business premises of his employer as a condition of his employment.

26 U.S.C. § 119(a).

Gallagher, 219 F.3d 426, 431 (5th Cir. 2000) (emphasis added). In Gallagher, the claimant argued that non-taxable "container royalty payments"[4] were part of his average weekly wage for the purposes of the LHWCA. See id. The claimant's employer contended that those payments were "fringe benefits," which are specifically excluded under § 902(13). Id.

In defining the line between fringe benefits and wages, the Gallagher panel cited approvingly to the reasoning of an earlier Fourth Circuit case, Universal Maritime Service Corp. v. Wright, 155 F.3d 311 (4th Cir. 1998), and explicitly adopted the definitions of "wages" and "fringe benefits" from that case. Gallagher, 219 F.3d at 432. In construing § 902(13), the court in Universal defined "wages" as "the 'money rate' of compensation that is provided (1) for the employee's services (2) by an employer (3) under the employment contract in force at the time of the injury," as well as the reasonable value of any taxable advantage. 155 F.3d at 319. "Fringe benefits," as we explained in Gallagher, "refers only to a class of fringe benefits whose value is too speculative to be readily converted into a cash equivalent." 219 F.3d at 432 (citing Universal, 155 F.3d at 324). Applying those definitions, the Gallagher court concluded that the container royalty payments were not fringe benefits, and that because the employer paid them based on the number of hours the employee worked, they were compensation for services rendered and therefore fell under § 902(13)'s definition of wages. Id. at 432-33.

The Fourth Circuit's decision in Custom Ship Interiors v. Roberts, 300 F.3d 510 (4th Cir. 2002), which cites Universal and our decisions in Gallagher and Quinones, is particularly persuasive. In Roberts, a cruise ship employee received a non-taxable daily payment designed to cover his meal and lodging expenses

---

[4] These payments were distributed annually and were based on an employee's seniority and hours worked that year. Gallagher, 219 F.3d at 431 n.10.

while away from home. Id. at 512. However, because the cruise ship provided free room and board to its employees, the claimant incurred no such expenses that the per diem purported to cover. Id.

In determining whether these per diem payments constituted wages, the court examined in-depth § 902(13). See id. at 513-15. Heavily citing Universal, the court noted that the definition of wages in § 902(13) is properly read as three separate clauses. It first observed that "[t]he opening clause of § [902(13)] broadly covers the money rate at which an employee is compensated under his employment contract for providing services . . . . 'At a minimum, this encompasses cash compensation' provided for services rendered under the employment contract." Id. at 513 (quoting Universal, 155 F.3d at 319). The court further explained that even "[i]f the payment at issue is not regular cash compensation it might still fall under the second clause, which expressly includes as a 'wage' the reasonable value of 'any advantage' received by the employee that is subject to tax withholding." Id. at 513-14 (citing Universal, 155 F.3d at 319-20). Most importantly for the instant case, the court explicitly noted that "the second clause does not serve to limit the first. Instead, it defines a different category of benefits that might be considered wages." Id. at 514 (citing Universal, 155 F.3d at 319 n.10). Thus, "[w]hether or not a payment is subject to withholding is not the exclusive test of a 'wage.' Monetary compensation paid pursuant to an employment contract is most often subject to tax withholding, but the LHWCA does not make tax withholding an absolute prerequisite of wage treatment." Id. at 515. Applying the definitions of "wages" and "fringe benefits" from Universal and Gallagher, the court found the per diem payments to have

"every indicia of an ordinary wage,"[5] id., and concluded that the "so-called per diem . . . was nothing more than a disguised wage." Id. at 515.

Notwithstanding such reasoning, B&D urges this court to apply a strict rule that only taxable compensation can constitute wages under the LHWCA. We decline to adopt such a rule. The plain text of § 902(13) defines wages as the "money rate at which the employee is compensated" plus any taxable advantages. Quinones, 206 F.3d at 479. The money rate clause of § 902(13) does not require taxability. The ALJ and BRB properly concluded that the per diem payments in this case played the role of money wages—they were paid at an hourly rate and did not directly correspond to any actual expenses of the employee. Although B&D variously argues that the per diem payments were designed to defray travel, lodging, or commuting expenses, these explanations are unconvincing. Pearley worked approximately seventy miles from his home, but B&D admitted that the same per diem structure would apply to an employee who lived across the street from his place of employment. The per diem payments depended on only the number of hours an employee worked. Furthermore, another rationale supported B&D's decision to pay employees in this way. The per diem payments were designed to maximize employees' take home pay, provide tax benefits to the employer, and keep up with B&D's competitors that paid employees in a similar manner.

Thus, the per diem payments in this case played the role of wages: they were calculated based on the number of hours worked; they were paid in the same paycheck as the employee's normal wages; the per diem was an unrestricted payment, unrelated to actual costs of meals, lodging, or travel; the

---

[5] The court noted that (1) the claimant "regularly received [the per diem payments] as a part of his employment contract"; (2) "[l]ike his hourly wages, the payments correlated to the amount of time [the claimant] worked each week"; (3) "the payments were unrestricted cash payments"; and (4) there was not even a requirement that the claimant incur any room and board expenses. Roberts, 300 F.3d at 514.

same per diem was paid to all employees regardless of where they live; and the per diem constituted almost half of Pearley's gross pay. The only contrary factor is B&D's contention that the per diem was not subject to withholding; however, this court in Gallagher held certain non-taxable payments to be part of an employee's "money rate" of compensation under § 902(13). See 219 F.3d at 433. In light of the LHWCA's purpose of compensating injured employees for the loss of wage-earning capacity, the per diem payments in this case formed a part of Pearley's regular wages.

B&D claims that the ALJ's decision is inconsistent with our holding in Berry v. Excel Group, Inc., 288 F.3d 252 (5th Cir. 2002). In that case, an electrician, Berry, sued his employer under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, claiming that his $150 weekly "per diem" payment should count as regular pay for the purpose of calculating his overtime compensation. Id. at 253. Despite the fact that the employer paid all employees the same per diem regardless of where they lived, the court concluded that the per diem was reasonable as reimbursement for Berry's 100-mile commute. Id. at 254. This holding is inapposite. The Berry court construed the definition of wages under the FLSA, which uses a different definition than the LHWCA.[6] In addition, the per diem payments in Berry were "legitimate, reasonable reimbursements for travel expenses." Id. Here, by contrast, B&D provided other reasons for the per diem payment structure, such as remaining competitive, providing a higher salary to employees, and producing tax benefits for the employer.

---

[6] Under the FLSA, an employee's "regular rate" of pay excludes "reasonable payments for traveling expenses, or other expenses, incurred by an employee in the furtherance of his employer's interests and properly reimbursable by the employer; and other similar payments to an employee which are not made as compensation for his hours of employment." 29 U.S.C. § 207(e)(2).

B&D also suggests that the ALJ's decision in this case conflicts with decisions of ALJs and the BRB in several prior LHWCA cases. However, to the extent that those prior decisions conflict with our own precedent, we are compelled to follow Fifth Circuit jurisprudence. Furthermore, prior administrative decisions are not uniformly consistent on this point. In at least one case, the BRB upheld an ALJ's decision that a claimant's per diem payment should be included in his average weekly wage. See Colbert v. CDI Aircraft Maint., BRB No. 97-1120 (1998).[7]

Finally, B&D argues that Pearley "cannot have it both ways"—if the per diem was part of his wages, it should be taxed; if it is a non-taxable advantage or fringe benefit it should not be part of his wages under the LHWCA. B&D variously defines the per diem as reimbursement for travel, lodging, meals, or commuting expenses, and it is not clear under what authority these payments are excluded from federal income taxation. Understandably, Pearley does not challenge B&D's claim that the per diem payments are not taxable. The government, which filed a brief in support of the BRB's decision, expressly takes no position on the taxability of the per diems. The questions of taxability of these payments is an issue not currently before this court. Today we merely conclude that these per diem payments qualify as wages under the LHWCA.

---

[7] B&D also argues that the BRB's decision is in conflict with McNutt v. Benefits Review Board, 140 F.3d 1247 (9th Cir. 1998). McNutt, however, is distinguishable from the instant case. McNutt involved a true per diem payment—there, the employer paid the claimant $100 for each day he worked abroad to defray room and board expenses related to living abroad. Id. at 1248. There was no evidence that the employer paid all employees this amount, nor that the claimant would have received this per diem had he not been stationed abroad. Pearley, by contrast, received the per diem payments at an hourly rate; the payments were not tied to reimbursement for lodging or meals.

## IV.  CONCLUSION

For the reasons stated above, we hold that the BRB properly considered the per diem payments in this case to be "wages" for purposes of the LHWCA. Accordingly, we deny the petition for review.

PETITION DENIED.