# IN THE UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

No. 01-60448
Summary Calendar

ROBBIE GIROIR,

Petitioner,

VERSUS

CONRAD INDUSTRIES, INCORPORATED; ZURICH INSURANCE COMPANY;
DIRECTOR, OFFICE OF WORKER'S COMPENSATION PROGRAMS,
UNITED STATES DEPARTMENT OF LABOR,

Respondents.

Petition for Review of an Order of
the Benefits Review Board
m 00-0761

March 5, 2002

Before JONES, SMITH, and
EMILIO M. GARZA, Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]

The Administrative Law Judge ("ALJ")

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

denied Robbie Giroir's claim for benefits under the Longshore and Harbor Worker's Compensation Act, 33 U.S.C. § 901 *et seq.* ("LHWCA"), finding, after a formal hearing, that Giroir had failed to prove that he had suffered a harm caused, aggravated, or accelerated by employment conditions. The Benefits Review Board ("Board") affirmed. In his petition for review, Giroir argues only that substantial evidence does not support the ALJ's decision. Finding no reversible error, we deny

the petition for review.

## I.

Giroir worked in a shipyard owned and operated by Conrad Industries, Inc. ("Conrad"), first as a subcontractor with C-Fab Industries and then as a shipfitter and employee of Conrad's. As a shipfitter, Giroir repaired iron on boats, cutting out old rusted iron and putting in new iron. He routinely cropped out the iron to be replaced, found a piece to replace it, cut it to size, and tacked it into place.

The witnesses agreed that shipfitters commonly carried small pieces of iron for distances of up to 300 feet but disagreed over the average weight of these iron pieces. Giroir testified that he typically lifted fifty to sixty pounds; Ricky Land, another fitter, testified that shipfitters often lifted as much as their own weight; and Herman Bailey, a shipyard superintendent, testified that in over nineteen years, he could not recall a fitter lifting and carrying an object that weighed more than thirty-five pounds.

In the early morning of November 28, 1997, Giroir participated in a barroom fight that led to his arrest and conviction for simple battery. Bradley Bergeron, an eyewitness to the fight, testified that the fight degenerated until Giroir and his opponent were wrestling on the floor.

Giroir testified as follows: On December 3, 1997, David Fontenot, his foreman, ordered him to carry a twelve-foot piece of angle iron 150 yards to a stairway at the stern of a vessel in dry dock. Fontenot refused to allow him to cut the angle iron on land to the desired seven-foot length. Giroir had to carry the iron angle manually because the shore side crane was broken, and no other cranes were servicing the dry dock.

While climbing the stairs on the stern of the boat and carrying the angle iron on his back, Giroir injured his back. He then carried the angle iron up a passage inside the boat near the bow, where he lowered it through a manhole in the passageway and down into the number 2 starboard ballast tank. He took this lengthy route because the manhole was the only means of access to the number 2 starboard ballast tank.

Conrad pointed to conflicting evidence on all of these points during the hearing. Fontenot denied that he ever would have instructed a fitter to cut the iron on board the ship rather than on land. Land, one of Giroir's witnesses, testified that Giroir cut the angle iron on the shore rather than waiting to cut it on the ship. Shipyard records proved that the manhole was not the only access to the ballast tank; the workers had opened a four-by-five-foot hole in the lower hull to permit access by personnel and equipment. Finally, shipyard managers testified that a crane and several cherry pickers operated for nine-and-one-half hours that day and remained available at all times.

The medical experts disagreed about the cause of Giroir's injury. Stuart Phillips, Giroir's orthopedic surgeon, testified that the industrial accident caused Giroir's back injury, but he admitted that his conclusion derived primarily from Giroir's self-reported medical history. George Murphy, another orthopedic surgeon, testified that a physician could not determine whether the fight or the alleged lifting incident caused the injury. The other two doctors, specialists in family medicine and neurosurgery, treated Giroir in December

2

1997; neither of them could determine whether the fight or lifting the angle iron had caused the injury.

## II.

The ALJ found in favor of Conrad. He initially found that Giroir had proven a *prima facie* case and that LHWCA's presumption in favor of recovery applied but that Conrad had offered countervailing evidence that cast significant doubt on the existence of a work-related injury. Conrad's rebuttal evidence permitted the ALJ to evaluate the whole record. The ALJ found Conrad's witnesses more credible than Giroir's and rejected Phillips's causation hypothesis.

The ALJ granted Giroir's motion for reconsideration. Giroir objected to the ALJ's initial, inaccurate statement that witnesses had observed Giroir limping after the bar fight but before the alleged industrial accident. The ALJ corrected this inaccuracy but remained convinced that Giroir had failed to prove a work-related accident.

Giroir appealed to the Board, which upheld the ALJ's findings of fact and conclusions of law as rational, supported by substantial evidence, and in accordance with the law. The Board found that, despite the ALJ's initial misstatement, substantial evidence supported his decision and order.

## III.

Giroir's appeal boils down to a single argument: The ALJ's initial conclusion that witnesses had observed Giroir's injury after the fight but before the alleged accident so taints the decision that we must grant the petition for review. Like the ALJ and the Board before us, we conclude, however, that independent record evidence supports the ALJ's decision,

so we deny the petition.

## A.

Under the LHWCA, the petitioner must allege that working conditions or an accident in the course of employment caused an injury. *U.S. Industries/Federal Sheet Metal, Inc. v. Dir., OWCP*, 455 U.S. 608, 615-16 (1982); *Port Cooper/T. Smith Stevedoring Co., Inc. v. Hunter*, 227 F.3d 285, 287 (5th Cir. 2000). If the petitioner makes this *prima facie* showing, a rebuttable presumption arises that the workplace accident caused or aggravated the employee's injury. Id.[1] The employer must counter this presumption with "substantial evidence" that the employment did not cause or aggravate the injury. *Conoco, Inc. v. Dir., OWCP*, 194 F.3d 684, 690 (5th Cir. 1999). If the employer rebuts the presumption with the kind of evidence a reasonable mind would accept as adequate to support the conclusion, the presumption falls away, and the ALJ will determine the existence of an injury, and its relation to employment, on the basis of the whole record. *Id.*; *Lennon v. Waterfront Transp.*, 20 F.3d 658, 662 (5th Cir. 1994).

## B.

Giroir challenges only the ALJ's factual finding that Giroir's employment did not cause or aggravate his back injury. We consider the record as a whole to determine whether factual findings are supported by substantial evidence. *James J. Flanagan Stevedores, Inc. v. Gallagher*, 219 F.3d 426, 429 (5th Cir. 2000). We have described the substantial evidence

---

[1] The LHWCA creates the presumption: "In any proceeding for the enforcement of a claim for compensation under this chapter it shall be presumed, in the absence of substantial evidence to the contrary (a) [t]hat the claim comes within the provisions of this chapter." 33 U.S.C. § 920(a).

3

standard as "deferential," *Conoco, Inc.*, 194 F.3d at 690, and "somewhat narrow," *Avondale Shipyards, Inc. v. Kennel*, 914 F.2d 88, 90 (5th Cir. 1990). Substantial evidence is more than a scintilla and evidence that a reasonable person would consider persuasive. *Louis Dreyfus Corp. v. Dir., OWCP*, 125 F.3d 884, 886-87 (5th Cir. 1997). We must not reweigh the evidence or substitute our judgment for the ALJ's, but we do have a duty independently to review the record. *Id.*

The substantial evidence standard requires us to defer to certain types of judgments made by the ALJ; we defer to the ALJ's choice between conflicting evidence or testimony. *Avondale Shipyards*, 914 F.2d at 90-91. When the ALJ chooses among reasonable, competing inferences from the evidence, we must adopt that inference. *Mijangos v. Avondale Shipyards, Inc.*, 948 F.2d 941, 945 (5th Cir. 1992); *Miller v. Central Dispatch*, 673 F.2d 773, 779 (5th Cir. 1982). Finally, we accept the ALJ's judgments about a witness's credibility unless they are "patently unreasonable." *Hall v. Consol. Employment Sys., Inc.*, 139 F.3d 1025, 1032 (5th Cir. 1998); *Lennon*, 20 F.3d at 663.

### C.

Giroir argues that the ALJ's chronological misunderstanding undermines the entire decision, including unrelated credibility determinations made by the ALJ. On reconsideration, the ALJ admitted the factual mistake but found that other evidence supported his decision.

Giroir fails effectively to contend with the ALJ's other resolutions of disputed fact: (1) Giroir significantly understated the seriousness of the fight. Bergeron, an eyewitness, explained that Giroir and his opponent landed and continued wrestling on the barroom floor. Fontenot testified that Giroir arrived at work after the fight with a black eye, busted lip, and requested time off because he was hurting. (2) Medical experts could not rule out the fight, rather than an industrial accident, as the cause of the back injury. The ALJ found Murphy's testimony that the fight could have caused the back injury more persuasive than Phillips's opinion that the fight did not cause the injury. Specifically, the court pointed out that Phillips had relied heavily on Giroir's self-reported medical history and not mechanical tests or diagnostic tools. (3) Fontenot testified that he would never have ordered Giroir to carry a twelve-foot length of angle iron; Fontenot himself had ruptured three disks previously and stated that this increases his awareness of heavy lifting's risks. Bailey testified that in nineteen years of employment, he has never seen an employee lift and move a piece of angle iron measuring over six feet. (4) Giroir, Land, and Bannon Canty testified as eyewitnesses to the accident, but the ALJ considered their testimony not credible because of inconsistencies and contradictions. Workers had opened an access hole in the hull that would have made it irrational for Giroir to enter through the manhole; Giroir's witnesses offered contradictory testimony about whether he cut the angle iron on shore; and shipyard managers and records reflected that cherry pickers were available to transport large pieces of angle iron. All of these subsidiary findings led the ALJ to conclude that the fight, and not an industrial accident, caused Giroir's back injury.

Setting aside the chronological mistake, the ALJ pointed to ample evidence to support his conclusion that the fight, rather than the alleged accident, caused Giroir's injury. Many

4

of the ALJ's decisions rested on credibility determinations and reasonable inferences from the facts. Even if, *arguendo*, we disagreed with the ALJ, we could not determine that his decision was not supported by substantial evidence. Substantial record evidence supports all of his subsidiary fact findings, and he reasonably chose to believe Conrad's witnesses and disbelieve Giroir's.

The petition for review is DENIED.