# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

December 21, 2021

Lyle W. Cayce
Clerk

No. 20-60357

Ramon Rivera,

*Petitioner*,

*versus*

Director, *Office of Workers' Compensation Programs, United States Department of Labor*; Ameri-Force; Signal Mutual Indemnity Association, Limited,

*Respondents*.

Petition for Review of the Decision and Order of the Benefits Review Board
United States Department of Labor
Office of Workers' Compensation Programs
BRB Case No. 17-0438
District Director Case No. 07-306441

Before Elrod, Willett, and Engelhardt, *Circuit Judges*.
Jennifer Walker Elrod, *Circuit Judge*:

Ramon Rivera was injured on the job while employed by Ameri-Force. He successfully obtained a workers' compensation award after filing a claim with the Office of Workers' Compensation Programs of the U.S. Department of Labor. The question before us is whether he is also entitled to attorney's fees under 33 U.S.C. § 928(b). Because Rivera is entitled to attorney's fees

under the plain text of that provision, we REVERSE the decision of the Benefits Review Board and REMAND for further proceedings.

I.

Rivera brought a hearing-loss claim with the Department of Labor against Ameri-Force and its insurer. In December of 2015, Ameri-Force responded by paying Rivera for two weeks of disability benefits based on an average weekly wage of $212.17. But Ameri-Force disputed that it was the "last responsible employer" and thus liable under the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901–950. On July 28 of the following year, the claims examiner assigned to the dispute issued a memorandum noting that Rivera sought benefits based on 35.31% binaural hearing loss and an average weekly wage of $1,027.37. The claims examiner recommended that Rivera had made a *prima facie* case against Ameri-Force and that Ameri-Force is the last responsible maritime employer. The claims examiner asked the parties to consider that recommendation and reach an agreement on the disputed issues.

On August 5, 2016, Ameri-Force notified the claims examiner and Rivera by letter that it accepted its designation as the responsible employer. But Ameri-Force explained that negotiations concerning Rivera's average weekly wage were ongoing and that it would submit further documentation on that issue if the parties could not agree. It also explained that it organized an additional medical evaluation with Dr. Seidemann, a doctor of its choosing, to take place on August 23, 2016. Ameri-Force expressed that it "would appreciate the opportunity to present the doctor's findings before any final recommendations are made concerning the binaural hearing loss." Two weeks later, Ameri-Force sent another letter to the claims examiner arguing that Rivera's average weekly wage should not include his *per diem* payments and that the value should be $274.11.

No. 20-60357

Shortly thereafter, on August 24, 2016, a newly assigned claims examiner issued a recommendation. The recommendation stated that Ameri-Force was Rivera's last responsible employer, Ameri-Force was responsible for costs associated with Rivera's 35.31% binaural hearing loss and his hearing aids, and that Rivera's average weekly wage should include *per diem* payments.

Immediately upon receiving the recommendation letter on August 29, 2016, Ameri-Force sent a letter to the new claims examiner asking him to "reconsider and withhold" the recommendation until Ameri-Force provided the findings from the second medical evaluation on Rivera's hearing loss and the claims examiner was able to review it. Three days later, Ameri-Force sent the claims examiner another letter. Enclosed were the results of Dr. Seidemann's evaluation, which concluded Rivera had suffered a 21% binaural hearing loss. The letter also stated:

> Based on our conversation, it is my understanding that[,] after considering the IME report from Dr. Seidemann and the wage information which we have provided, you will be issuing supplemental recommendations and that the parties will have 14 days from the issuance of these recommendations in which to advise whether they are accepted or rejected. If I am in error, please advise.

On September 7, the claims examiner indeed issued a "Supplemental Informal Conference Recommendation." The document purported to supplement both the July 28 and August 24 recommendations. In it, the claims examiner recommended that Rivera suffered a 28.16% hearing loss, a rate which represented the average of the competing rates proposed by the parties. The document also explained that under that rate, the average weekly wage would be $439.55 and the total benefits award due would be $24,755.46. Finally, it advised that any party who rejected the

3

recommendation should initiate the process for a formal hearing within 21 days.  Neither party did so.

But on September 12 and 13, Ameri-Force offered to settle the dispute.  It told Rivera that it agreed to pay $25,151.05 in disability indemnity benefits, use an average weekly wage of $659.33, and provide $5,000 in medical benefits if Rivera did not seek attorney's fees from Ameri-Force.  If Rivera rejected the offer, Ameri-Force explained, it would pay benefits in accordance with the September 7 recommendation.  Rivera rejected the offer a couple days later, and on September 16 Ameri-Force paid $24,755.46, the amount set forth in the September 7 recommendation.  Two weeks later, the claims examiner issued another supplemental recommendation concluding that Ameri-Force in fact owed $25,151.05, which was based on a 28.61% hearing loss, not a 28.16% hearing loss; Ameri-Force paid the difference shortly thereafter.

In November of 2016, Rivera filed a petition seeking an award of $8,153 in attorney's fees under 33 U.S.C. § 928 for the work performed on this matter.  Ameri-Force objected.  The district director concluded that Rivera was entitled to the fees under subsection (b) because Ameri-Force did not timely pay Rivera in accordance with the August 24 recommendation and Rivera ultimately obtained a greater award than Ameri-Force was initially willing to pay after that recommendation.  Ameri-Force appealed to the BRB. On February 28, 2018, the BRB reversed, holding that the August 24 recommendation was rendered moot by the September 7 recommendation. In the BRB's view, because Ameri-Force timely paid Rivera in accordance with the September 7 recommendation, the criteria for attorney's fees under § 928(b) were not satisfied.

Rivera moved for reconsideration, and on October 24, 2018, the BRB granted the request only to remand for the district director to consider whether Rivera was entitled to fees under § 928(a).  It rejected his request as

to its determination under § 928(b).  Ameri-Force challenged the BRB's decision as to subsection (a), and on February 28, 2020 the BRB agreed and reversed the prior decision by *en banc* vote.  But it granted a remand to the district director to consider the availability of attorney's fees under § 928(c).  Rivera petitioned this court for review of the BRB's reversal of the district director's award of fees under § 928(b).  So, the sole issue before us is whether that provision's criteria for attorney's fees are satisfied.

## II.

As a preliminary matter, Ameri-Force asks us to dismiss as untimely Rivera's petition for review of the BRB's § 928(b) determination.  We decline to do so.

Under 33 U.S.C. § 921(c), any petition for review of a final order of the BRB must be filed with the appropriate Court of Appeals within sixty days of the BRB's order.  Rivera filed his petition on April 28, 2020.  He claims that it was timely because it was filed within sixty days of the BRB's February 28, 2020 *en banc* order.  Ameri-Force contends that the petition was untimely because it was not filed within sixty days of the BRB's October 24, 2018 order, which was when the BRB first made its determination regarding fees under § 928(b).

We consider the timeliness of the petition in relation to the February 28, 2020 *en banc* order, not the October 24, 2018 order.  Rivera's initial request for a fee award sought fees and costs under both subsection (a) and (b) of § 928.  In its October 24, 2018 order, the BRB remanded for the director to consider the availability of fees under subsection (a).  But in doing so it remanded the *case*.  Thus, although the BRB had already resolved the subsection (b) portion of the fee request in the October 24, 2018 order, it did not issue a final resolution of the fee request, which included the subsection (a) request, until February 28, 2020.  The sixty-day timeline to file a petition under § 921(c) began then.  *See Newpark Shipbuilding & Repair, Inc. v.*

*Roundtree*, 723 F.2d 399, 400–01 (5th Cir. 1984) (explaining that a "final" decision for purposes of § 921(c) is one that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment"(quoting *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 373–74 (1981)). We therefore hold that Rivera's petition was timely filed.

## III.

Turning to the substance of Rivera's claim, the only issue before us is whether Rivera is entitled to an award of attorney's fees under § 928(b). We hold that he is.

"This Court conducts a de novo review of the BRB's rulings of law, owing them no deference because the BRB is not a policymaking agency." *Carey v. Ormet Primary Aluminum Corp.,* 627 F.3d 979, 982 (5th Cir. 2010) (quoting *Pool Co. v. Cooper*, 274 F.3d 173, 177 (5th Cir. 2001)). As for fact issues, we "only determine whether evidence exists to support the [director's] findings." *Pool Co.*, 274 F.3d at 178. We therefore consider "whether the BRB properly concluded that the ALJ's factual findings were [or were not] supported by substantial evidence on the record as a whole." *James J. Flanagan Stevedores, Inc. v. Gallagher*, 219 F.3d 426, 429 (5th Cir. 2000).

An employee may collect attorney's fees under § 928(b) if: (1) an informal conference is held; (2) the BRB or a deputy commissioner issues a written recommendation; (3) the employer refuses to adopt the recommendation within fourteen days; and (4) the employee procures a lawyer's services to achieve an award greater than that which the employer was willing to pay after the written recommendation was issued. 33 U.S.C. § 928(b); *see also Carey*, 627 F.3d at 982. All those criteria were met here.

The claims examiner held an informal conference with Rivera and Ameri-Force on July 26, 2016. On August 24, 2016, the replacement claims

examiner issued a written recommendation declaring that Ameri-Force was responsible for the costs associated with Rivera's 35.31% hearing loss and Rivera's hearing aids, and that average weekly wage should include Rivera's *per diem* payments.[1]  Ameri-Force did not accept that recommendation.[2] Instead, it asked the claims examiner to reconsider its recommendation, asserting that benefits should be calculated based on 21% hearing loss, not 35.31%.  In the end, Ameri-Force paid benefits corresponding to a 28.61% hearing loss.  Simply put, a conference was held, a recommendation was issued, Ameri-Force refused to adopt the recommendation, and, with counsel's assistance, Rivera ultimately obtained an award greater than that which Ameri-Force was initially willing to pay after the recommendation. Under § 928(b), then, Rivera is entitled to attorney's fees.

The BRB erred when it concluded that the August 24, 2016 recommendation did not apply for the purposes of attorney's fees under § 928(b) because the claims examiner's September 7, 2016 recommendation rendered it moot.  Ameri-Force asserts that requiring it to accept the August 24 recommendation after the September 7 recommendation supposedly rendered it moot would "lead to absurd consequences and glaringly unjust

---

[1] Ameri-Force received the recommendation on August 29, 2016.

[2] Ameri-Force argues that the § 928(b) fee-shifting provision is not triggered because it did not "reject" the August 24 recommendation.  But, as this court has explained, § 928(b) "gives an employer an opportunity to avoid the payment of attorney's fees by either (1) accepting the Board's or Commissioner's recommendations or (2) refusing those recommendations but tendering a payment that is accepted by the claimant." *FMC Corp. v. Perez*, 128 F.3d 908, 910 (5th Cir. 1997).  Ameri-Force did neither. It asserts that on September 12, 2016 it extended an offer to Rivera to pay $25,151.05 in disability and $5,000 in medical benefits if Rivera did not seek attorney's fees; and if Rivera chose to seek attorney's fees, Ameri-Force would pay $24,755.46 in disability and would authorize medical payments subject to audit.  The first of these offers was not an acceptance of the August 24 recommendation because it was conditioned on Rivera not seeking attorney's fees.  The second offer was, if anything, an acceptance of the September 7 recommendation, not the August 24 recommendation.

results."  It likens such a requirement to requiring a party to obey a moot *order*.

Ameri-Force provides no legal authority showing that a subsequent recommendation renders a prior one moot.[3]  And the plain language of § 928(b) suggests no such thing.  That provision merely states that after a recommendation is issued, the employer may open itself up to attorney's fees liability if it refuses to accept the recommendation within fourteen days.  33 U.S.C. § 928(b).  The statute says nothing about the effect of follow-up recommendations, so such recommendations do not undo the direct consequences of the statute's plain terms.

Moreover, Ameri-Force's analogy to a moot order crumbles under the weight of examination.  A party *must* follow a court order.  If it does not, it may be held in contempt of court.  *See Walling v. Crane*, 158 F.2d 80, 83 (5th Cir. 1946).  So, if a later order contradicts an earlier one, a party can only follow one of them.  In such circumstances, it makes sense only to require a party to follow the later order, so that the party has an open path to avoid contempt.  But a recommendation by a claims examiner is different.  Parties have no legal duty to follow such a recommendation.  An employer *may* become liable for attorney's fees later *if* it refuses to follow the recommendation, *and* the employee then pays for an attorney's services, *and* the employee ultimately obtains an award greater than the employer's post-recommendation offer.  33 U.S.C. § 928(b); *Carey*, 627 F.3d at 982.  So, whereas two conflicting orders cannot operate simultaneously without forcing a party into contempt, two active recommendations can overlap without creating a Catch-22.

---

[3] At oral argument, Ameri-Force's counsel admitted there was no legal authority one way or the other on the issue of whether a subsequent recommendation invalidates a prior recommendation.

Nor may the August 24, 2016 recommendation be ignored on the ground that the recommendation was issued in a manner inconsistent with a party's expectations. If a claims examiner issues a recommendation, then a recommendation has been issued for the purposes of § 928(b). That does not change just because the parties may have expected otherwise. The regulations promulgated under the statute confirm this understanding. They provide that if parties do not agree with the claims examiner's post-conference recommendations, then further conferences can be scheduled. 20 C.F.R. § 702.316. But that provision cautions that if a party disagrees with a recommendation, the attorney's fees provision may apply. *Id.* ("If they disagree *(Caution: See § 702.134)*, then the district director may schedule such further conference or conferences as, in his or her opinion, may bring about agreement . . . ." (emphasis added)). That fees provision, like § 928(b), explains that the employer owes attorney's fees if it refuses to accept the claims examiner's recommendation and the employee procures a lawyer's services to obtain a greater award than that which the employer initially was willing to pay. 20 C.F.R. § 702.134(b).

It is true that the regulations do not specifically contemplate when a claims examiner issues a subsequent *recommendation* without a new conference. But the regulations make clear that if an employer wishes to seek reconsideration of an initial recommendation by way of a new conference, it may do so but may be liable for attorney's fees depending on the result. All that to say, the regulations indicate that an employer must accept a recommendation within fourteen days *even if* the employer anticipates additional proceedings and determinations by the claims examiner.

Section 928(b) does identify an exception, but it does not apply here. Under that exception, attorney's fees are not due if: (1) the employer agrees to a medical examination by a physician employed or selected by the Secretary (an Independent Medical Examiner, or "IME"); and (2) the

employer agrees to pay compensation in accordance with the IME's findings.  33 U.S.C. § 928(b).

In this case, however, Ameri-Force asked for the claims examiner to reconsider the August 24 recommendation because of an anticipated report from a medical examiner *arranged by Ameri-Force*—not an IME.[4] The statute reasonably allows an extension of the fourteen-day period when an employer promises to abide by an independent examination.  But a request to reconsider in light of an employer's own report is simply an objection to the recommendation.  An employer certainly is entitled to submit its own evidence contradicting the employee's assertions regarding the severity of injury.  But under the statute the employer cannot avoid attorney's fees liability by delaying the claims examiner's recommendation simply because the employer thinks the claims examiner got it wrong.

Ameri-Force also argues that the claims examiner's August 24, 2016 recommendation was not a "recommendation" at all for the purposes of § 928(b) because it did not include a specific dollar amount due for average weekly wage or total compensation.  We disagree.

Section 928(b) provides that if a controversy develops over the compensation an employee is due, "the deputy commissioner or Board shall set the matter for an informal conference and following such conference the deputy commissioner or Board shall *recommend in writing a disposition of the controversy*."   33 U.S.C. § 928(b) (emphasis added).  We hold that the recommended-disposition requirement is satisfied if the claims examiner issues in writing a proposed resolution of any matter central to the question of how much compensation an employer owes an employee.

---

[4] The employer has referred to the medical examiner as an IME, but because the doctor was selected by the employer and not the Secretary, that label is incorrect.

No. 20-60357

This court has not squarely addressed the issue in a published case,[5] but we find decisions of our sister circuits instructive. The Fourth Circuit has held that the recommendation requirement was satisfied when "the claims examiner recommended in writing that [the employee's] 'present left knee problems be accepted as a result of the [incident in question].'" *Newport News Shipbuilding & Dry Dock Co. v. Dir., Off. of Workers' Comp. Programs*, 474 F.3d 109, 113–14 (4th Cir. 2006). Because the employer "did not accept [that] recommendation within fourteen days of its receipt," the employer opened itself up to potential attorney's fees liability. *Id.*

In an identically named case, the Fourth Circuit also held that the recommendation requirement was satisfied when "the District Director . . . stat[ed] that the position of the Office of Workers' Compensation Programs was that [the employer] should begin payments of the [percent disability] rating with which it had no disagreement." *Newport News Shipbuilding & Dry Dock Co. v. Dir., Off. of Workers' Comp. Programs*, 477 F.3d 123, 127 (4th Cir. 2007). Under this instructive precedent, then, a recommendation is issued for the purposes of § 928(b) when a claims examiner offers a conclusion on an issue central to the determination of compensation owed. Notably, the opinions do not appear to rest their conclusions on whether, for example, the recommendation states a specific dollar amount owed.

Other cases suggest the same principle by explaining what is *not* a recommendation. The Sixth Circuit held that no recommendation was issued when the claims examiner explicitly stated in the "Recommendation"

---

[5] In an unpublished decision, this court explained that a recommendation was not issued by a claims examiner when the claims examiner explicitly stated that "she could not issue a recommendation because she lacked the necessary wage and medical information." *Craven v. Dir., Off. of Workers' Comp. Programs*, 407 F. App'x 854, 855–56 (5th Cir. 2011). The memorandum from the claims examiner to the parties specifically explained that "[c]urrent medical information" and "[w]age information should be provided . . . prior to issuing a recommendation with regard to [average weekly wage]." *Id.* at 856 n.2.

section of the post-conference memorandum that no recommendation was being made. *Pittsburgh & Conneaut Dock Co. v. Dir., Off. of Workers' Comp. Programs*, 473 F.3d 253, 263, 265 (6th Cir. 2007). And the Fourth Circuit explained that a recommendation was not issued when the claims examiner simply demanded a claimant provide evidence to support its assertion about three days of lost time. *Virginia Int'l Terminals, Inc. v. Edwards*, 398 F.3d 313, 315, 318 n.* (4th Cir. 2005). So, in these cases in which a recommendation was *not* issued, the claims examiner clearly made no determination on any issue central to the question of whether or how much compensation was due.

In this case, however, the claims examiner *did* make a determination on a central issue in its August 24, 2016 recommendation. Indeed, he did so for multiple issues pivotal to the question of owed compensation. In a document the claims examiner called a "recommendation," he specifically directed that: (1) "[Rivera's] wages used to calculate [average weekly wage] should include those listed as per diem by the employer and added to his other wages to compute a compensation rate in this case"; (2) Rivera had no food or lodging expenses; (3) Rivera's average weekly wage should be calculated by dividing by fifty-two his total earnings in the last year of his work; and (4) Ameri-Force is Rivera's last responsible employer "and [is] responsible for [Rivera's] 35.31% binaural hearing loss plus hearing aids." Each of these conclusions has a determinative effect on the total compensation Rivera was due.

It is true that the recommendation also asked Ameri-Force to submit documentation of Rivera's yearly earnings. Perhaps for that reason, the recommendation did not specify a particular dollar amount Ameri-Force should pay. But the recommendation was nevertheless a recommended disposition under § 928(b). Rivera's yearly earnings were not in dispute between the parties. The disputed issues up until that point were whether *per diem* pay should be included in the average weekly wage, whether Ameri-

Force was the last responsible employer,[6] and the degree of hearing loss Rivera suffered.  The August 24 recommendation offered a conclusion for each of these issues.

What is more, the August 24 recommendation gave Ameri-Force everything necessary to determine the total compensation owed.  The parties had already identified the average weekly wage values both including and excluding *per diem* payments.  The August 24 recommendation concluded that *per diem* payments should be included.  The recommendation then explained that the employer would be liable for Rivera's 35.21% hearing loss and for his hearing aids.  As the District Director found, "[t]he Employer had the necessary wage records in its possession to comply with [the claims examiner's] recommendation to add per diem payments and wage payments for the 52 weeks preceding the accident date and to divide that amount by 52 to calculate the proper [average weekly wage]."  The BRB did not disturb that finding.   Thus, the August 24 recommendation provided all the remaining items necessary to determine the total compensation value, and it described the equation by which to calculate that value.  The employer needed only to apply the instructions from the August 24 recommendation to the numbers the employer already possessed, and that would have produced the specific compensation amount due.

Relatedly, as a matter of statutory interpretation, "disposition" could refer to what the August 24 recommendation accomplished.  When § 928(b) was enacted in its current form, Black's Law Dictionary noted that the term "dispose of" may refer to the determination of suits.  *Dispose Of*, BLACK'S LAW DICTIONARY (4th ed. 1968).  And it explained that "controversy" can refer to either "a civil action or suit," *or* simply "a litigated question."

---

[6] By the time the August 24 recommendation was issued, Ameri-Force had agreed that it was the last responsible employer.

No. 20-60357

*Controversy*, BLACK'S LAW DICTIONARY (4th ed. 1968).  So, we may interpret "disposition of the controversy" to apply to situations in which the claims examiner recommends a manner in which a dispute between parties could be resolved.  With that understanding in mind, the August 24 recommendation was a disposition in two related but independent senses.  First, it expressed a conclusion for all the central issues on which the parties disagreed.  Second, it provided everything necessary for the employer to pay the compensation it owed.  So, the August 24 recommendation was a recommendation for the "disposition of the controversy."[7]

Because all the criteria for an award of attorney's fees under 33 U.S.C. § 928(b) are satisfied as to the claims examiner's August 24, 2016 recommendation, we REVERSE the decision of the Benefits Review Board and REMAND for further proceedings consistent with this opinion.

---

[7] Rivera also argues that he is entitled to a fee award under § 928(b) based on the claims examiner's July 28, 2016 recommendation, on the ground that after that recommendation Ameri-Force continued litigating the issue of whether it was the last responsible maritime employer.  Because Rivera did not present this argument to the BRB, we will not consider it.  *See Gallagher*, 219 F.3d at 437.

No. 20-60357

Kᴜʀᴛ D. Eɴɢᴇʟʜᴀʀᴅᴛ, *Circuit Judge*, concurring in part and dissenting in part:

I agree that Rivera's petition was timely filed and that the August 24, 2016 recommendation was a "recommendation" for purposes of § 928(b). On the instant record, however, I part ways with the majority regarding Rivera's entitlement to an award of attorney's fees. Had the claims examiner not issued the September 7, 2016 "Supplemental Informal Conference Recommendation" until *after* the expiration of the fourteen-day period following Ameri-Force's August 29 receipt of the August 24 recommendation, I would agree with the majority's determination. But, importantly, that did not occur here. Instead, within those fourteen days, the claims examiner issued the September 7 "Supplemental Informal Conference Recommendation," which recommended a different binaural hearing loss percentage (28.16%) from that set forth in the August 24 recommendation (35.31%). Thus, relative to binaural hearing loss, the September 7 recommendation superseded the August 24 recommendation and triggered a new fourteen-day period for purposes of § 928(b).[1] Ameri-Force timely paid the resulting amount of indemnity benefits—$24,755.46— within those fourteen days. It also timely paid the additional amount of benefits set forth in the September 30, 2016 supplemental recommendation.

As a matter of policy, the informal conference and recommendation process is designed to expedite the resolution of claims through the timely exchange of pertinent information. I think that purpose was served here. That is, the parties conducted themselves in good faith as expected by the statutory

---

[1] Notably, the claims examiner's issuance of the September 7 supplemental recommendation was not unexpected by the parties or contrary to a prior agreement between them. Indeed, the record reveals no objection by Rivera's counsel to the procedures and schedules proposed in Ameri-Force's counsel's August 5, August 29, and September 1 correspondence.

No. 20-60357

scheme in narrowing and then resolving the monetary amount due without the necessity of a formal administrative hearing.  Accordingly, I dissent with the attorney's fees aspect of the majority's opinion.